*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OLIVIA BELLESTRI,

Plaintiff-Appellant,

v

BRANDON WILLIAMS and COSTCO
WHOLESALE CORPORATION,

Defendants-Appellees.

UNPUBLISHED
May 13, 2026
11:09 AM

No.  374502
Wayne Circuit Court
LC No.  21-017421-CZ

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

PER CURIAM.

Plaintiff, Olivia Bellestri, appeals as of right the trial court order granting summary disposition to defendant Costco Wholesale Corporation under MCR 2.116(C)(7) (statute of limitations).  On appeal, Bellestri challenges the trial court's rulings on her claims for quid pro quo sexual harassment and hostile work environment based upon sexual harassment under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*.  For the reasons stated in this opinion, we affirm in part and reverse in part.

## I.  BASIC FACTS

Bellestri filed this suit against Costco, her employer, alleging that she was subjected to quid pro quo sexual harassment and a hostile work environment based upon sexual harassment.[1] She alleged that the sexual harassment was perpetrated by defendant, Brandon Williams, who was a supervisor at Costco up until the time that he was sentenced to prison for raping and physically assaulting her on February 19, 2021.

In her complaint, Bellestri alleged that the sexual harassment started in January 2017, when Williams, who worked at Warehouse #341 with her, positioned her against a wall and forcibly

---

[1] Bellestri also brought claims against Costco for negligent retention, breach of contract, and promissory estoppel, but she later abandoned those claims.

kissed her on the lips. Thereafter, she began a consensual "dating" relationship with him that continued until she ended it in August 2018. Bellestri alleged that during the "relationship," Williams threatened her with physical harm; physically abused her, including hitting and pushing her while they were working together at warehouse #341; and threatened to kill her if she "did not want to be his wife." She also maintained that Williams interfered with her employment at Costco, alleging that he leveraged his supervisory authority over her to gain access to her "personal affairs," to direct her immediate supervisors to deny her paid time off or transfer requests, and to schedule paid time off for her so that she could not easily refuse to go on vacation with him. She further alleged that after she ended their relationship, Williams threatened to destroy her career at Costco and to distribute sexually explicit photographs of her to her co-workers.

Around August 24, 2018, Bellestri reported Williams's sexual harassment to the warehouse manager for warehouse #341 via an e-mail. Bellestri alleged that the warehouse-manager told her that her allegations were "not believed," amounted to "malicious gossip," and that Bellestri would be fired if she repeated her allegations to her co-workers. However, documentary evidence submitted in support of Costco's eventual motion for summary disposition under MCR 2.116(C)(7) confirms that, in response to "reports of misconduct," Costco demoted Williams and moved him to a different warehouse in a different city. And in her affidavit in response to Costco's (C)(7) motion, Bellestri averred that in response to her complaint "Costco demoted [Williams] . . . and moved him to another location." Thus, after his transfer on August 31, 2018, he did not share a physical workspace with Bellestri, nor was he her direct supervisor.

Bellestri alleged that, after Williams's transfer, she had no communication with him until November 2018, when he reached out to her in an attempt to reconcile their relationship. At that time, she was cordial with him "due to the threats he had made against her in the past." In her affidavit, she averred that he threatened her job if she "did not engage in sex acts with him." Her complaint alleges that Williams had a history of sexually harassing female employees at Costco, including grabbing a female by the buttocks and repeatedly hugging female employees. She asserted that, despite being aware of the allegations against Williams, Costco did nothing more than transfer Williams to another warehouse and then promote him back into a supervisory position. Bellestri also alleged that Williams had an influential relationship with upper-level managers, supervisors, and others who had direct or indirect decision-making authority over her at Costco. She contended that he used that influence to prevent her from discussing her sexual harassment allegations and that he "leveraged his continued employment" at Costco as a supervisor to "access and control" Bellestri and her career by threatening, coercing, and intimidating her to maintain communications and contact with him even after she reported his sexual harassment. In her affidavit, she stated that he told her that "he was a manager at Costco, he knew [her] supervisors, they were good friends of his and he would have [her] fired if [she] did not have sex with him." She explained that, given her observations of "Costco's weak, ineffective responses to complaints of sexual harassment," she "reasonably believed" that he could carry out his threats and that, even though he was not physically at the same warehouse as she was, "he was still employed by Costco in a management position with the influence to interfere with and destroy [her] career at Costco." She averred that she complied with his sexual demands because she needed to remain employed and feared she would lose her job if she did not submit to his demands. She added, in her affidavit, that, in 2020 and 2021, she reported to several managers and supervisors at Costco that Williams was "threatening [her] employment if [she] did not engage in a sexual relationship with him, but they did nothing to protect [her] or stop the threats."

Bellestri asserted that she was transferred to a different warehouse in a different city in February 2021. Thereafter, she went to Williams's house because he threatened her employment if she did not do so. While there, Williams argued with her, choked her, slammed her head against a wall, punched her, threw her to the floor, and jumped on top of her. He then forced her into the shower, forcibly removed her clothing, and penetrated her vagina with his penis. The day after the sexual and physical assault, Williams distributed sexually explicit photographs of Bellestri to members of her family and to her co-workers. Eventually, as noted above, Williams was charged with and convicted of crimes related to his physical and sexual assault of Bellestri.

Costco moved for summary disposition under MCR 2.116(C)(7) and (C)(8). The matter was stayed pending resolution of Williams's criminal case. After the stay was lifted, the court granted Bellestri leave to amend her complaint. Bellestri filed a first amended complaint. In response, Costco filed a supplemental brief in support of its motion for summary disposition.

As relevant to the issues raised on appeal, Costco argued that Bellestri's hostile work environment claim was barred by the statute of limitations because she failed to allege any conduct that occurred within the limitations period that would support a finding that Bellestri was subjected to a hostile work environment. Costco stressed that, after August 31, 2018, Bellestri and Williams did not work together and that Williams was not her supervisor during the "material times" relevant to the limitations period. Likewise, Costco contended that the quid pro quo sexual harassment claim was time-barred because Bellestri failed to allege any "tangible effect" that Williams's alleged conduct had on Bellestri's employment during the limitations period.

In response, Bellestri contended that a claim for a hostile work environment is not dependent upon a finding that the plaintiff worked at the same location as the person perpetrating the sexual harassment. Rather, the crux of the claim is that the harasser's conduct or communications created an offensive, hostile work environment. Bellestri asserted that she alleged in her complaint that after Williams was moved to a different warehouse, he used his employment at Costco and his influence and relationship with Costco's upper management to threaten her employment in order to coerce her into continuing to communicate with him and engage in sexual acts with him. She further contended that she reported the ongoing sexual harassment to managers and supervisors in 2020 and 2021, but that nothing was done to protect her. Notably, she attached an affidavit averring facts in support of her position, including averments that the abuse continued after Williams was transferred to a different warehouse and that she reported his conduct in 2020 and 2021 to multiple supervisors and managers. She added that, in light of the other complaints of sexual harassment against Williams, Costco "allowed a sexual time bomb" to work for it. Bellestri argued that, as a result, her claims for quid pro quo sexual harassment and a hostile work environment based upon sexual harassment were not barred by the relevant limitations period.

In a reply brief, Costco stressed that Bellestri and Williams did not work together after he was transferred and that, after his transfer, Williams lacked any ability to control or influence Bellestri's employment. Costco argued that her allegations that Williams had influence and control over her work through his relationship with others were insufficient to sustain her claim for a hostile work environment. It also asserted that the information in Bellestri's affidavit should not be used to remedy the defects in her amended complaint.

Following oral argument, the trial court concluded that Bellestri had not failed to plead a claim upon which relief could be granted, so it denied the (C)(8) portion of Costco's appeal. The court, however, concluded that Bellestri's claims were barred by the relevant limitations period, so it granted summary disposition under MCR 2.116(C)(7). This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The trial court granted summary disposition under MCR 2.116(C)(7). We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence. Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. [*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).]

"When addressing a motion under subrule (C)(7), the trial court must accept as true the allegations of the complaint unless contradicted by the parties' documentary submissions." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 443; 761 NW2d 846 (2008). Summary disposition is not warranted if there is a factual dispute. *Zaryski v Nigrelli*, 337 Mich App 735, 740; 976 NW2d 916 (2021) (quotation marks and citation omitted).

### B. ANALYSIS

A claim under ELCRA must be brought within three years of its accrual. See MCL 600.5805(2); see also *Garg v Macomb County Comm Mental Health*, 472 Mich 263, 284-285; 696 NW2d 646 (2005) (finding the three-year statute of limitations for death or personal injury, now MCL 600.5805(2), applies generally to ELCRA claims). Costco argues that Bellestri's claims accrued prior to August 31, 2018, when Williams was demoted and transferred to a different warehouse in response to her allegations of sexual harassment. As a result, her complaint, which was filed on December 21, 2021, was untimely. In response, Bellestri argues that Williams's sexual harassment continued after his transfer and culminated in him physically assaulting her, raping her, and distributing sexually explicit photographs of her to her family and co-workers in 2021. She maintains that her ELCRA claims were, therefore, brought within the limitations period. We consider each claim in turn.

#### 1. QUID PRO QUO SEXUAL HARASSMENT

"To prevail on a claim of quid pro quo sexual harassment under the ELCRA, a plaintiff must establish two separate elements: "(1) that she was subject to any of the types of unwelcome sexual conduct or communication described in the statute, and (2) that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Hamood v Trinity Health Corp*, ___ Mich App ___, ___; ___

NW3d ___ (2024) (Docket No. 364627); slip op at 6, quoting *Chambers v Trettco, Inc*, 463 Mich 297, 310; 614 NW2d 910 (2000). "The plaintiff must demonstrate a tangible employment action, either adverse or otherwise, that was causally related to the plaintiff's submission or rejection of the harassment." *Hamood*, ___ Mich App at ___; slip op at 6. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, [or] failing to promote . . . ." *Chambers*, 463 Mich at 320 n 7. "Quid pro quo sexual harassment occurs only where an individual is in a position to offer tangible job benefits in exchange for sexual favors or, alternatively, threaten job injury for failure to submit." *Hamood*, ___ Mich App at ___; slip op at 6. Consequently, the "party engaged in quid pro quo harassment is almost always, by definition, a supervisor." *Id*.

In this case, it is undisputed that Williams was Bellestri's supervisor prior to his demotion and transfer on August 31, 2018. We have carefully reviewed Bellestri's amended complaint and the documentary evidence submitted in support of Costco's (C)(7) motion and Bellestri's response to that motion. See *Tenneco Inc*, 281 Mich App at 443 (stating that the allegations in the complaint are treated as true unless contradicted by documentary evidence submitted on the (C)(7) motion). Nothing in the pleading or the documentary evidence, however, indicates that Costco left Williams in a position capable of offering Bellestri tangible job benefits in exchange for sexual favors or with the ability to threaten her job based upon her failure to submit to his demands for sexual favors. Williams was not Bellestri's supervisor. His alleged ability to threaten her career at Costco was dependent upon his alleged influence and friendship with individuals who were actually in a position to take a tangible employment action against Bellestri. Influence with individuals with authority over the plaintiff cannot form the basis for a quid pro quo sexual harassment claim. See *Hamood*, ___ Mich App at ___; slip op at 6-7 (noting that a claim for quid pro quo fails if the harasser was not empowered by his or her employer "to take [a] tangible employment action" against the plaintiff). Because Bellestri has alleged no conduct by Williams within the statutory limitations period that can form the basis for her quid pro quo sexual harassment claim, the trial court did not err by summarily dismissing that claim under MCR 2.116(C)(7).

## 2. HOSTILE WORK ENVIRONMENT

"To prevail on her claim of hostile work environment, [the] plaintiff must establish five elements: (1) [the] plaintiff belonged to a protected group; (2) [the] plaintiff was subjected to communication or conduct on the basis of sex; (3) [the] plaintiff was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with [the] plaintiff's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior." *Hamood*, ___ Mich App at ___; slip op at 8.

> The governing standard does not establish strict liability for sexual assault by a co-worker or supervisor, because an employer must be found vicariously liable via the doctrine of respondeat superior. An employer, of course, must have notice of alleged harassment before being held liable for not implementing action. [A]n employer may avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment. The bottom line is that, in cases involving a hostile work environment claim, a

plaintiff must show some *fault* on the part of the employer. *Id*. (quotation marks and citation omitted; brackets added).]

Because summary disposition was granted under MCR 2.116(C)(7), we consider the pleadings and the documentary evidence submitted by the parties in support of their positions. Based upon that, we conclude that Bellestri alleged conduct forming the basis for her hostile work environment claim occurred after August 31, 2018, when Williams was moved to a different warehouse. Bellestri, a woman, alleged that after his transfer and demotion, Williams was again promoted by Costco to a supervisory position. He then contacted her. He threatened to destroy her career if she did not submit to a sexual relationship with him. Although he lacked direct supervisory authority over Bellestri, he told her that he had the ability to influence her supervisors based upon his friendship with them. Bellestri alleged that, using that influence, Williams was able to affect her employment by having her paid time off canceled or scheduled for his benefit. He also allegedly used that influence to prevent her from obtaining a transfer to a different warehouse. Bellestri also alleged that the warehouse manager that she reported the abuse to was friends with Williams and that she threatened Bellestri with the termination of her employment if she repeated her initial allegations of sexual harassment against her. She also alleged that he threatened to disclose sexually explicit photographs of her to her co-workers. As a result of his threats, she was "forever fearful" that he would interfere with her career and get her fired. Finally, although she did not allege in her amended complaint that she reported Williams's ongoing sexual harassment after 2018, in her affidavit—which must be considered on a (C)(7) motion—she averred that in 2020 and 2021 she reported to multiple supervisors and managers that Williams' was threatening her employment if she did not engage in a sexual relationship with him.[2] That report is sufficient to put Costco on notice of the ongoing nature of Williams's sexual harassment. Considered as a whole, the allegations in the complaint and the averments in her affidavit, are sufficient to establish that a claim for hostile work environment based upon sexual harassment accrued during the limitations period. As a result, the trial court erred by summarily dismissing Bellestri's hostile work environment claim.

Costco's reliance upon the fact that Williams was demoted and moved to a different warehouse is unavailing as the key question is whether Williams's conduct or communications with Bellestri created a hostile work environment. At the time that the conduct and communications occurred, both were employed by Costco, albeit at different warehouses after August 31, 2018. In addition, Williams's conduct and communications were not all taken outside the context of their shared employment. Rather, he allegedly based his threats upon his close and

---

[2] On appeal, Costco argues that Bellestri's affidavit makes conclusory allegations that are insufficient to establish the elements of a hostile work environment claim. We disagree. The affidavit indicates that she reported to six supervisors and managers at Costco that Williams was threatening her employment unless she engaged in a sexual relationship with him. She named each supervisor and manager by name. Although the timeframe of the reports spanned a two-year period, that fact alone does not render her otherwise specific assertions insufficient to establish that Costco was provided notice of Williams ongoing sexual harassment of Bellestri in 2020 and 2021.

influential relationship with Bellestri's supervisors, who had taken actions interfering with Bellestri's employment at his request.

Affirmed in part and reversed in part. We do not retain jurisdiction. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Matthew S. Ackerman